**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GILDA VINCENT, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>     v.<br><br>NATIONAL DEBT RELIEF LLC,<br><br>                                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gilda Vincent ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.      Defendant National Debt Relief LLC ("Defendant") owns and operates a website, nationaldebtrelief.com (the "Website").

2.      When users visit the Website, Defendant causes the Claritas TRKN Tracker (the "TRKN Tracker" or "Tracker") to be installed on Website visitors' internet browsers.  Defendant then uses this Tracker to collect Website visitors' IP addresses.

3.      Because the Tracker captures Website visitors' "routing, addressing, or signaling information," the Tracker constitutes a "pen register" under Section 638.50(b) of the California Invasion of Privacy Act ("CIPA").  Cal. Penal Code § 638.50(b); *see also Greenley v. Kochava, Inc.*, 2023 WL 4833466 (S.D. Cal. July 27, 2023).

4.      By installing and using the Tracker without Plaintiff's prior consent and without a court order, Defendant violated CIPA § 638.51(a).

5.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant's violation of CIPA § 638.51.

**PARTIES**

6.      Plaintiff Vincent resides in San Jose, California and has an intent to remain there, and is therefore a citizen of California.  Plaintiff Vincent was in California when she visited the Website.

7.      Defendant National Debt Relief is a New York limited liability company under the laws of the State of New York, with its principal place of business in New York, New York.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

9.      Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its principal place of business [New York] and the State under whose laws it is organized [New York]."  *See* 28 U.S.C. § 1332(d)(10).  Thus, this Court has personal jurisdiction over Defendant.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

**I.    THE CALIFORNIA INVASION OF PRIVACY ACT**

11.    The California Legislature enacted CIPA to protect certain privacy rights of California citizens.  The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

12.    As relevant here, CIPA § 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

13.    A "pen register" is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  Cal. Penal Code § 638.50(b).

14.    A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  Cal. Penal Code § 638.50(b).

15.    In plain English, a "pen register" is a "device or process" that records *outgoing* information, while a "trap and trace device" is a "device or process" that records *incoming* information.

16.    Historically, law enforcement used "pen registers" to record the numbers of outgoing calls from a particular telephone line, while law enforcement used "trap and trace

devices" to record the numbers of incoming calls to that particular telephone line.  As technology advanced, however, courts have expanded the application of these surveillance devices.

17.     For example, if a user sends an email, a "pen register" might record the email address it was sent from, the email address the email was sent to, and the subject line—because this is the user's *outgoing* information.  On the other hand, if that same user receives an email, a "trap and trace device" might record the email address it was sent from, the email address it was sent to, and the subject line—because this is *incoming* information that is being sent to that same user.

18.     Although CIPA was enacted before the dawn of the Internet, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley*, 2023 WL 4833466, at *15 (referencing CIPA's "expansive language" when finding software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications.").  This accords with the fact that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

19.     Individuals may bring an action against the violator of any provision of CIPA—including CIPA § 638.51—for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).

## II.     DEFENDANT VIOLATES THE CALIFORNIA INVASION OF PRIVACY ACT

### A.     The Tracker Is A "Pen Register"

20.     To make Defendant's Website load on a user's internet browser, the browser sends

4

an "HTTP request" or "GET" request to Defendant's server where the relevant Website data is stored.  In response to the request, Defendant's server sends an "HTTP response" back to the browser with a set of instructions.  *See* Figure 1.

**Figure 1:**



21. The server's instructions include how to properly display the Website—*e.g.*, what images to load, what text should appear, or what music should play.

22. In addition, the server's instructions cause the Tracker to be installed on a user's browser.  The Tracker then causes the browser to send identifying information—including the user's IP address—to Claritas.

23. The IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods (*e.g.*, 192.168.123.132).  The first two sets of numbers indicate what network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132).

24. Thus, the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server—and the IP address contains geographical location.

25. Through an IP address, the device's state, city, and zip code can be determined.

26. As alleged below, Defendant installs the Tracker on the user's browser, and the Tracker collects information—users' IP addresses—that identifies the outgoing "routing,

addressing, or signaling information" of the user.  Accordingly, the Tracker is a "pen register."

            *1.*     *Claritas TRKN Tracker*

27.     Claritas is a software-as-a-service company that develops the TRKN Tracker, which it provides to website owners like Defendant for a fee.

28.     According to Claritas, it "is a data-driven marketing company [that] leverage[s] [] unique data and proprietary identity graph, to help marketers find their best prospects, improve marketing execution[,] and deliver superior ROI."[1]

29.     In other words, Claritas enables companies to leverage consumer data to measure the effectiveness of offline and online campaigns, determine channels that are contributing to engagements and conversions, and assess Key Performance Indicators ("KPIs"), thereby driving brand awareness and sales.  To achieve this, Claritas uses its Tracker to receive, store, and analyze information collected from website visitors, such as visitors to Defendant's Website.

30.     The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends an HTTP response with directions to install the TRKN Tracker on the user's browser.  The TRKN Tracker, in turn, instructs the user's browser to send Claritas the user's IP address.  *See* Figure 2.

---

[1] *About Us*, CLARITAS, https://claritas.com/about (last visited Jan. 17, 2024).

**Figure 2:**



31.     Moreover, Claritas stores a cookie with the user's IP address in the user's browser cache.   When the user subsequently visits Defendant's Website, the TRKN Tracker locates the cookie identifier stored on the user's browser.  If the cookie is stored on the browser, the TRKN Tracker causes the browser to send the cookie along with the user's IP address to Claritas.   A general diagram of this process is pictured as Figure 3, and explains how the Website causes the TRKN Tracker to install a cookie on a user's browser.

**Figure 3:**



32.     If the user clears his or her cookies, then the user wipes out the TRKN Tracker from its cache.  Accordingly, the next time the user visits Defendant's Website the process begins over

again: (i) Defendant's server installs the TRKN Tracker on the user's browser, (ii) the TRKN Tracker instructs the browser to send Claritas the user's IP address, (iii) the TRKN Tracker stores a cookie in the browser cache, and (iv) Claritas will continue to receive the user's IP address on subsequent Website visits as part of the cookie transmission (*see* ¶ 31, *supra*).

33.      In all cases, however, Claritas receives a user's IP address each and every time a user interacts with the website of one of Claritas' clients, including Defendant's Website.

34.      The TRKN Tracker is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data." *Greenley*, 2023 WL 4833466, at *15.

35.      Further, the TRKN Tracker is a "device" because "in order for software to work, it must be run on some kind of computing device." *James v. Walt Disney Co.*, --- F. Supp. 3d ---, 2023 WL 7392285, at *13 (N.D. Cal. Nov. 8, 2023).

36.      Because the TRKN Tracker captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of CIPA § 638.50(b).

**B.      Defendant Installed And Used The Tracker On Plaintiff's and Users' Browsers Without Prior Consent Or A Court Order**

37.      Defendant owns and operates the Website.  The Website advertises that it can help customers settle debt for less than the customers owe.[2]  The Website presents customers with debt relief information, client success stories, and the ability to apply for their services.

38.      When companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions.[3]

---

[2] Latoya Irby, *National Debt Relief Company Review for 2024*, INVESTOPEDIA (Oct. 1, 2023), https://www.investopedia.com/national-debt-relief-review-5092836.

[3] *See Third-party Tracking*, PIWIK, https://piwik.pro/glossary/third-party-tracking/ (last visited Jan. 19, 2024) ("Third-party tracking refers to the practice by which a tracker, other than the website directly visited by the user, traces or assists in tracking the user's visit to the site. Third-

39.     Often times, third-party scripts are installed on websites "for advertising purposes."[4]

40.     Further, "[i]f the same third-party tracker is present on many sites, it can build a more complete profile of the user over time."[5]

41.     Since at least November 2022, if not earlier, Defendant has incorporated the code of the Tracker into the code of its Website.  Thus, when Plaintiff visited the Website, the Website caused the Tracker to be installed on Plaintiff's and other users' browsers.

42.     As outlined above, when a user visits the Website, the Website's code—as programmed by Defendant—installs the Tracker onto the user's browser.

43.     Upon installing the Tracker on its Website, Defendant uses the Tracker to collect the IP address of visitors to the Website, including the IP address of Plaintiff and Class Members. *See* Figures 2-3, *supra*.

44.     Defendant then uses the IP address of Website visitors, including those of Plaintiff and Class Members, to serve targeted advertisements and conduct website analytics.

45.     At no time prior to the installation and use of the Tracker on Plaintiff's and Class Members' browsers, or prior to the use of the Tracker, did Defendant procure Plaintiff's and Class Members' consent for such conduct.  Nor did Defendant obtain a court order to install or use the Tracker.

---

party trackers are snippets of code that are present on multiple websites. They collect and send information about a user's browsing history to other companies…").

[4] *Id.*

[5] *Id.*

**C.      Defendant's Conduct Constitutes An Invasion Of Plaintiff's And Class Members' Privacy**

46.     The collection of Plaintiff's and Class Members' personally identifying, non-anonymized information through Defendant's installation and use of the Tracker constitutes an invasion of privacy.

47.     As alleged herein, the Tracker is designed to analyze Website data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue, all through their surreptitious collection of Plaintiff's and Class Members' data.

48.     Claritas is a digital marketing platform that prides itself on its ability to "[p]inpoint[] potential customers more precisely [and] [e]ngage with them one-on-one more effectively[,] turning them into loyal, paying customers more efficiently."[6]

49.     Claritas helps companies like Defendant market, advertise, and analyze user data from its website.  One way Claritas assists with marketing is through its Syndicated Audiences, which allows its clients to "know more about prospects' and customers' lifestyle and behaviors, so [clients] can better target [their] messages and achieve better sales results."[7]  This feature allows companies to "find more and better prospects," target consumers across different devices and channels, and "pinpoint customers when they're ready to buy," all in "near-real time."[8]

50.     For example, this feature allows companies to "connect with" potential targets based on their race: "Claritas offers the most actionable acculturation data on the market … which gives clients the ability to connect with Hispanic and Asians consumers … at home, on social, and

---

[6] *About Us*, CLARITAS, https://claritas.com/about (last visited Jan. 17, 2024).

[7] *Syndicated Audiences*, CLARITAS, https://claritas.com/syndicated-audiences (last visited Jan. 17, 2024).

[8] *Id.*

through digital efforts."[9]  It also allows companies to "identify customers" through the consumers' zip codes.[10]

51.      Claritas also offers companies the Claritas Identity Graph, which "uses transformative technology and superior data science to connect [] customers' and prospects' real world data to their devices and digital behavior with more accuracy and scale than anyone in the industry."[11]  This feature "reaches nearly 100% of US consumer households and ties together over 5 billion data points monthly to produce the highest def portrait of each customer and prospect."[12]

52.      Specifically, Claritas provides companies with "the highest def profile of the consumer" by providing names, emails, postal addresses, digital IDs, social IDs, mobile app IDs, and IP addresses.[13]

53.      In order to perform the functions listed above, Claritas needs to collect data that identifies a particular user.  This is why Claritas collects IP addresses: it allows Claritas to ascertain a user's identity and target that user with personalized advertisements, as well as to track a user's Website activity over time (*i.e.*, through repeated Website visits) to target a user with advertisements relevant to the user's personal browsing activity.

54.      In other words, when users visit Defendant's Website, Defendant utilizes the TRKN Tracker to collect IP addresses so that Defendant can analyze user data, create and analyze the performance of marketing campaigns, and target specific users or specific groups of users for

---

[9] *Id.*

[10] *Id.*

[11] *Claritas Identity Graph*, CLARITAS, https://claritas.com/claritas-identity-graph (last visited Jan. 17, 2024).

[12] *Id.*

[13] *Id.*

advertisements.  All of this helps Defendant further monetize its Website and maximize revenue by collecting and disclosing user information.

## III.   PLAINTIFF'S EXPERIENCE

55.    Plaintiff has visited the Website multiple times—including as long ago as November 2022 and as recently as January 2024—on her desktop browser.

56.    When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the Tracker to be installed on Plaintiff's browser.  Defendant and Claritas then used the Tracker to collect Plaintiff's IP address.  *See* Figure 4.

**Figure 4:**



57.    Defendant and Claritas used the information collected by the Tracker to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and advertisers' revenue.

58.    Plaintiff did not provide her prior consent to Defendant to install or use the Tracker on Plaintiff's browser.

59.    Defendant did not obtain a court order before installing or using the Tracker.

60.     Plaintiff has, therefore, had her privacy invaded by Defendant's violations of CIPA § 638.51(a).

## **CLASS ALLEGATIONS**

61.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff seeks to represent a class defined as all California residents who accessed the Website in California and had their IP address collected by the Tracker (the "Class").

62.     The following people are excluded from the Class: (i) any Judge presiding over this action and members of her or her family; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

63.     **Numerosity:** The number of people within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

64.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions

affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following:

    (a)    Whether Defendant violated CIPA § 638.51(a);

    (b)    Whether the Tracker is a "pen register" pursuant to Cal. Penal Code §§ 638.50(b);

    (c)    Whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class;

    (d)    Whether Defendant sought or obtained a court order for its use of the Tracker; and

    (e)    Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

65.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class Members, visited the Website and had her IP address collected by the Tracker, which were installed and used by Defendant.

66.    **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

67.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation

also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation Of The California Invasion Of Privacy Act,
Cal. Penal Code § 638.51(a)**

68.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

69.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

70.     CIPA § 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

71.     A "pen register" is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  Cal. Penal Code § 638.50(b).

72.     The Tracker is a "pen register" because it is a "device or process" that "capture[d]" the "routing, addressing, or signaling information"—the IP address—from the electronic communications transmitted by Plaintiff's and the Class's computers or smartphones.  Cal. Penal Code § 638.50(b).

73.     At all relevant times, Defendant installed the Tracker—which is a pen register—on Plaintiff's and Class Members' browsers, and used the Tracker to collect Plaintiff's and Class Members' IP addresses.

74.     The Tracker does not collect the content of Plaintiff's and the Class's electronic communications with the Website.  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1008 (9th Cir. 2014) ("IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication…") (cleaned up).

75.     Plaintiff and Class Members did not provide their prior consent to Defendant's installation or use of the Tracker.

76.     Defendant did not obtain a court order to install or use the Tracker.

77.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 638.51(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 638.51(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For statutory damages of $5,000 for each violation of CIPA § 638.51(a);

(e)     For pre- and post-judgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary
        relief; and

(g)     For an order awarding and the Class their reasonable attorney's fees
        and expenses and costs of suit.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 19, 2024                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A**.

                                           By: */s/ Yitzchak Kopel*
                                                   Yitzchak Kopel

                                           Yitzchak Kopel
                                           Alec M. Leslie
                                           Max S. Roberts
                                           1330 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile: (212) 989-9163
                                           Email: ykopel@bursor.com
                                                   aleslie@bursor.com
                                                   mroberts@bursor.com

                                           *Attorneys for Plaintiff*