**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GILDA VINCENT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL DEBT RELIEF LLC,<br><br>Defendant. | Case No. 1:24-cv-00440-LJL<br><br>**DEFENDANT NATIONAL DEBT RELIEF LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** |


**GREENSPOON MARDER LLP**
BETH-ANN E. KRIMSKY
NY Bar No. 2321115; FL Bar No. 968412
Email: beth-ann.krimsky@gmlaw.com
Email: clemencia.corzo@gmlaw.com
JESSICA B. SANDER
NY Bar No. 4750725; FL Bar No. 43154
Primary E-mail: jessica.sander@gmlaw.com
Secondary E-mail: gabby.mangar@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 524-2427

*Attorneys for Defendant, National Debt Relief LLC*

## TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ....................................................................................................1

II. FACTUAL ALLEGATIONS ....................................................................................3

A. Plaintiff's Allegations ....................................................................................3

B. NDR's Arbitration Agreement.........................................................................4

III. ARGUMENT ..........................................................................................................7

A. Plaintiff's Claim Should Be Compelled To Arbitration Because Plaintiff Agreed To Arbitrate Her Claims ..............................................................................7

B. Plaintiff Is Bound By The Terms of Service And Arbitration Agreement .............9

1. Plaintiff Was on Inquiry Notice of the Arbitration Agreement Because a Reasonably Prudent User Would Have Seen NDR's Terms of Service ....10

2. Plaintiff Manifested Her Assent To NDR's Terms of Service and Arbitration Agreement. ..............................................................12

C. The Arbitration Agreement Governs Plaintiff's Claim ......................................14

IV. ALL PROCEEDINGS SHOULD BE STAYED PENDING ARBITRATION OF PLAINTIFF'S CLAIMS ...........................................................................................15

V. CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Insu. Co.*,
307 F.3d 24 (2d Cir. 2002) ..... 9

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ..... 7, 8

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ..... 8

*Beaupre v. Chubb & Son, Inc.*,
2020 WL 4569990 n.2 (D. Conn. Aug. 7, 2020) ..... 8

*Bissonette v. Lepage Bakeries Park St., LLC*,
460 F. Supp. 3d 191 (D. Conn. May 14, 2020) ..... 8

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ..... 14

*Doctor's Assocs., Inc. v. Distajo*,
944 F. Supp. 1010 (D. Conn. 1996) ..... 8

*Edmundson v. Klarna*,
85 F.4th 695 (2d Cir. 2023) ..... 8, 9, 10, 11, 12, 14

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ..... 15

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ..... 8

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..... 11, 12, 14

*Gorny v. Wayfair Inc.*,
No. 18 C 8259, 2019 WL 2409595 (N.D. Ill. June 7, 2019) ..... 13

*Graham v. Bloomberg L.P.*,
No. 22-CV-7015 (VSB), 2023 WL 6037974 (S.D.N.Y. Sept. 15, 2023) ..... 11, 15

*Green Tree Fin. Corp. v. Randolph*,
531 U.S. 79 (2000) ..... 8

*Hubbert v. Dell Corp.*,
359 Ill. App. 3d 976, 296 Ill. Dec. 258, 835 N.E.2d 113 (2005) ..... 13

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011) ..... 8

*Katz v. Cellco*,
794 F.3d 341 (2d Cir. 2015)........................................................................................ 15

*Khanna v. Am. Express Co.*,
No. 11 Civ. 6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) .................................. 8

*Lewis v. Samsung*,
Case No. 1:22-cv-10882 (JLR), 2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023) ...................... 15

*Maldonado v. National Football League*,
1:22-CV-022892023, 2023 WL 4580417 (S.D.N.Y. July 18, 2023)....................................... 14

*Meyer v. Uber Tech., Inc.*,
868 F.3d 66 (2d Cir. 2017)........................................................................... 9, 10, 11, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........................................................................................................ 7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ................................................................................... 10

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018)......................................................................... 10

*Pollstar v. Gigmania, Ltd.*,
170 F. Supp. 2d 974 (E.D. Cal. 2000)......................................................................... 10

*Ryan v. JPMorgan Chase & Co.*,
924 F. Supp. 2d 559 (S.D.N.Y. 2013)..................................................................... 3, 4, 5, 6

*Salameno v. Gogo Inc.*,
No. 16-CV-0487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016)............................................ 13

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)........................................................................................ 12

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)..................................................................................................... 8

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021)........................................................................................ 11

*Southland Corp. v. Keating.*,
465 U.S. 1 (1984)........................................................................................................ 7

*Sportvision, Inc. v. MLB Advanced Media, LP*,
2020 WL 1957450 (S.D.N.Y. 2020)............................................................................. 14

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
No. 3:06–CV–0891–B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ................................ 10

*Ticketmaster Corp. v. Tickets.com, Inc.*,
No. CV 997654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ............................................ 10

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) .......... 10

*Volt Info. Scis., Inc. v. Bd. of Trustees*,
489 U.S. 468 (1989).......... 9

Statutes

9 U.S.C. § 1.......... 1

9 U.S.C. § 2.......... 9

9 U.S.C. § 4.......... 8, 10

Defendant National Debt Relief LLC ("NDR" or "Defendant") respectfully submits this memorandum of law in support of its motion for an Order, pursuant to Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), compelling Plaintiff Gilda Vincent ("Vincent" or "Plaintiff") to arbitrate her claims against NDR pursuant to the terms of the parties' written arbitration agreement ("Arbitration Agreement") and to stay this action pending the determination of such arbitration.[1] Plaintiff agreed to that Arbitration Agreement on each of the multiple occasions she visited NDR's website ("NDR Website" and/or "Website") between November 2022 and January 2024, and became bound by the Website's Terms of Site (a/k/a "Terms of Service"), which contain the Arbitration Agreement. The Arbitration Agreement covers the very claims Plaintiff asserts in this case, prohibits Plaintiff from pursuing a class action (the "Class Action Waiver"), and requires her to arbitrate her claims on an individual basis before the American Arbitration Association ("AAA").

## I. INTRODUCTION

NDR is an accredited debt settlement company that has provided thousands of clients debt relief. Plaintiff, a California resident, alleges she repeatedly visited the NDR Website in the fourteen months between November 2022 and January 2024, presumably to learn about how NDR could assist in addressing her debt situation. *See* Complaint ["Compl."] [ECF 1] at ¶ 55. There are no allegations that NDR breached any agreement with Plaintiff; instead, Plaintiff claims that she was damaged when visiting the NDR Website because NDR allegedly uses "pen register" technology in violation of § 638.51 of the California Invasion of Privacy Act ("CIPA"). Despite being bound by the Arbitration Agreement, which contains an opt-out provision that she never

[1] NDR hereby expressly reserves all rights to respond to the Complaint herein, including moving to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), in the event the matter is not arbitrated.

exercised, Plaintiff nevertheless seeks to bring this putative class action in New York, in an attempt to recover a $5,000 statutory penalty afforded under the CIPA.

The Court need not, nor should it, reach the merits of Plaintiff's claim because it is subject to mandatory arbitration. Under the Arbitration Agreement Plaintiff repeatedly assented to through her multiple visits to the NDR Website, Plaintiff agreed to arbitrate "any disputes pertaining to information presented herein [on the NDR Website] and use of the Site." Donnelly Decl. at ¶ Ex. B. That language broadly encompasses the very claim she asserts arises out of her *use* of the NDR Website. Thus, Plaintiff waived the right to seek relief in court as well as the right to be a participant in "class actions or jury trials." *Id.* at ¶ 8, Ex. B.

There can be no question that the parties have an enforceable Arbitration Agreement covering Plaintiff's claim. NDR's Website plainly put any reasonably prudent user, such as Plaintiff, on inquiry notice that Plaintiff's use of the NDR Website was subject to NDR's Terms of Service, which specifically calls out the Arbitration Agreement on the homepage and landing pages. Donnelly Decl. at ¶ 6-7, Ex. A. The homepage and the landing pages of NDR's Website entitled "How It Works," "About Us," "Resources," "Client Stories," and "Blog" clearly and conspicuously feature a prominent Terms of Site hyperlink, which appears highlighted in white font set against a dark blue background. *Id.* Clicking the hyperlink brings Website visitors like Plaintiff immediately to the Website Terms of Service which prominently calls out the Arbitration Agreement in boldfaced font. *Id.* The Arbitration Agreement, as noted above, contains both a Class Action Waiver as well as a thirty (30) day opt-out provision that Plaintiff easily could have exercised, but never did. *Id.* at ¶ 9, Ex. B.

Arbitration agreements, like any other contract, must be enforced according to their terms. The prevailing law in the Second Circuit requires the Court to use the standard of a reasonably

prudent website user when analyzing whether a plaintiff was put on inquiry notice of, and assented to, a website's Terms of Service. New York courts regularly enforce web-based arbitration agreements where this standard is met, including those like the agreement Plaintiff entered into here. The facts overwhelmingly demonstrate that Plaintiff, who admits in her Complaint to having sufficient knowledge about how websites operate, visited the NDR Website multiple times where she would have plainly seen the Terms of Site hyperlink, giving Plaintiff notice that a visit to NDR's Website subjects the visitor to certain terms and conditions. A reasonably prudent user wanting to know what those terms and conditions are need only to click the Terms of Site hyperlink to view the Terms of Service, which calls out the Arbitration Agreement containing the Class Action Waiver in boldfaced font on the very first screen (without the need to scroll to see it).

With such obvious and repeated inquiry notice that her website use was subject to NDR's Terms of Service and Arbitration Agreement, Plaintiff elected to continue using and visiting the NDR Website subject to such terms. Therefore, Plaintiff must be compelled to individually arbitrate her claim against NDR.

## II. FACTUAL ALLEGATIONS[2]

### A. Plaintiff's Allegations

Plaintiff alleges NDR "causes the Claritas TRKN Tracker (the 'TRKN Tracker' or 'Tracker') to be installed on Website visitors' internet browsers" and that "Defendant then uses this Tracker to collect Website visitors' IP addresses." Compl. at ¶ 2. Plaintiff then makes the leap that because the Tracker allegedly captures Website visitors' "routing, addressing, or signaling information," which Plaintiff maintains is their IP addresses, it constitutes a "pen register" under

---

[2] On a motion to compel arbitration, the Court is not limited solely to the facts alleged in a complaint. *See Ryan v. JPMorgan Chase & Co*., 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013). In addition to the allegations in the Complaint, the pertinent facts for this motion are set forth in the accompanying declaration of Alan Donnelly, NDR's Vice President of Product and Design ("Donnelly Decl."), attached as Exhibit 1, and the exhibits annexed thereto.

Section 638.50(b) of CIPA. *Id.* at ¶ 3.

Plaintiff's cause of action arises out of her use of the NDR Website. While claiming that the Tracker was used without her consent, she alleges that she "has visited the Website multiple times—including as long ago as November 2022 and as recently as January 2024—on her desktop browser." *Id.* at ¶ 55. Plaintiff filed suit on behalf of herself and a purported class of persons who "accessed the Website in California and had their IP address collected by the Tracker," seeking to recover statutory damages of $5,000 per purported violation. *Id.* ¶ at 61.

**B. NDR's Arbitration Agreement**

NDR offers debt settlement services and owns and operates a Website at https://www.nationaldebtrelief.com/ to permit customers the ability to learn about its services and apply for its services. *Id.* at ¶¶ 1, 37.

A Terms of Site hyperlink to NDR's Terms of Service, which contains the Arbitration Agreement, appears prominently on the first page of NDR's Website and landing pages, under the section "Useful Links." Donnelly Decl. at ¶ 6-7. Like many companies with an online presence, that hyperlink is at the bottom of the homepage, where other links to important company information and more detailed notices appear (e.g., Contacts, Career Information, Privacy Policies, Terms of Site). *Id*. The Terms of Site hyperlink on the homepage and landing pages entitled "How It Works," "About Us," "Resources," "Client Stories," and "Blog" is prominently displayed in conspicuous white font set against a dark blue background. *Id*. at ¶ 7.

A user who clicks on the Terms of Site hyperlink is brought immediately to NDR's Terms of Service which display the Arbitration Agreement in boldfaced font. The Terms of Service begin by notifying visitors, in capital letters, that the terms are legally binding on the Website visitor:

> AGREEMENT BETWEEN USER AND National Debt Relief LLC - PLEASE READ THE TERMS OF SERVICE SET FORTH BELOW (THE "TERMS") GOVERN YOUR USE OF THIS WEBSITE ON THE WORLD WIDE WEB (THE

"SITE") AND ARE LEGALLY BINDING ON YOU.

*Id.* at Ex. B.

In bold font, the detailed and distinctly captioned Arbitration Agreement sets forth the terms under which disputes between Plaintiff and NDR, including disputes that arise out of use of the NDR Website, must be adjudicated:

> **This Agreement contains a binding arbitration agreement. These Terms affect your legal rights, including an agreement to resolve disputes that may arise between us by arbitration on an individual basis instead of by class actions or jury trials. As a condition of using this Site, you agree that any disputes pertaining to information presented herein and use of the Site shall be resolved through binding arbitration and not in a court. You have the right to opt-out of our agreement to arbitrate.**

*Id.*

The Arbitration Agreement also contains a prohibition, introduced in boldfaced font, against class actions and non-individualized relief, and make clear that claims must be brought by way of individual arbitration filed with the AAA:

> **DISPUTES AND ARBITRATION/CLASS ACTION WAIVER**
>
> Any dispute relating in any way to your visiting this website or your use of any of the Services shall be submitted to confidential, binding arbitration in New York, NY, except that, to the extent you have in any manner violated or threatened to violate National Debt Relief, LLC's intellectual property rights, National Debt Relief, LLC may seek injunctive or other appropriate relief in any state or federal court in New York, and you consent to exclusive jurisdiction and venue in such courts. Arbitration hereunder shall be conducted under the rules then prevailing of the American Arbitration Association. The arbitrator's award shall be binding, but subject to review in accordance with applicable statutes, rules and regulations governing arbitration awards and may be entered as a judgment in any court of competent jurisdiction. To the fullest extent permitted by applicable law, no arbitration hereunder shall be joined to an arbitration involving any other party subject to these Terms of Service, whether through class arbitration proceedings or otherwise.

*Id.*

Additionally, the Terms of Service give Website visitors the option to opt out of arbitration,

and provide clear instructions on how to do so:

> You may opt out of this Agreement to Arbitrate. If you do so, neither you nor we can require the other to participate in an arbitration proceeding. To opt out, you must notify us in writing, within 30 days of the date that you first began using this Site subject to these arbitration terms or changes to them, either by U.S. mail delivered to: Attn: Legal Department, National Debt Relief, LLC, P.O. Box 2011, New York, NY 10272 or by email delivered to success@nationaldebtrelief.com. You must include: (1) your name and residence address; (2) the email address and/or mobile telephone number associated with your account; and (3) a clear statement that you want to opt out of this agreement to arbitrate.
>
> *Id.*

NDR's Terms of Service and Arbitration Agreement (including the Class Action Waiver and opt-out provision) have been located on NDR's Website as described above, without change, at all times during which Plaintiff claims to have visited the Website from November 2022 to January 2024. *Id.* at ¶ 10. Thus, upon first entry to the NDR Website in November 2022, Plaintiff was free to continue using the NDR Website, or to exit it at any time, secure in the knowledge that she could opt out of the Arbitration Agreement and Class Action Waiver at any time within the following thirty (30) days. But Plaintiff never submitted any opt-out to NDR. *Id.* at ¶ 9. Instead, Plaintiff admittedly kept visiting the NDR Website multiple times over the course of at least fourteen months ("Plaintiff has visited the Website multiple times—including as long ago as November 2022 and as recently as January 2024—on her desktop browser;" "Since at least November 2022, if not earlier, Defendant has incorporated the code of the Tracker into the code of its Website. Thus, when Plaintiff visited the Website, the Website caused the Tracker to be installed on Plaintiff's and other users' browsers;" ". . . Plaintiff, like all other members of the Class Members, visited the Website . . . ."). Compl. at ¶¶ 41, 55, 65. By her actions, Plaintiff unquestionably agreed to NDR's Terms of Service, including the mandatory Arbitration Agreement. Heedless of her agreement to file any claims against NDR with the AAA, Plaintiff

filed a putative class action against NDR. Yet Plaintiff's relationship with NDR is governed by the Arbitration Agreement, which clearly covers the very claims she asserts here. Compl. at ¶¶ 41, 55.

## III. ARGUMENT

### A. Plaintiff's Claim Should Be Compelled To Arbitration Because Plaintiff Agreed To Arbitrate Her Claims

The Federal Arbitration Act, 9 U.S.C. § 4, and binding United States Supreme Court precedent require enforcement of the Arbitration Agreement between Plaintiff and NDR. The FAA, which applies to the Arbitration Agreement, was enacted "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citation omitted). It establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA federalizes arbitration law and "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate[.]" *Id*. at 25 n. 32. In the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*. 465 U.S. 1, 10 (1984).

"[T]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC*, 131 S. Ct. at 1748 (citation omitted). Section 2 of the FAA mandates that any agreement to settle a dispute by arbitration "shall be valid, irrevocable, and enforceable . . ." 9 U.S.C. § 2. "In line with these principles, courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC*, 131 S. Ct. at 1745 (citations omitted). "It is well-established that these statutory provisions reflect both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Edmundson v. Klarna*, 85 F.4th 695,

702 (2d Cir. 2023) (quoting *AT&T Mobility LLC*, 131 S. Ct. at 1745); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (finding federal courts must "rigorously enforce agreements to arbitrate."). To advance this policy, the FAA empowers district courts to compel arbitration. 9 U.S.C. § 4.

Accordingly, "[a]n order to arbitrate the particular grievance should ***not*** be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation omitted) (emphasis added). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Khanna v. Am. Express Co.*, No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).

"In deciding whether claims are subject to arbitration," courts in the Second Circuit limit their inquiry to: "(1) whether the parties have entered into a valid agreement to arbitrate,[3] and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). In making these determinations, "it is proper (and in fact necessary) to consider . . . extrinsic evidence," such as declarations. *Bissonette v. Lepage Bakeries Park St., LLC*, 460 F. Supp. 3d 191, 196 (D. Conn. May 14, 2020), *appeal docketed*, No. 20-1681 (2d Cir. filed May 27, 2020); *Beaupre v. Chubb & Son, Inc.*, 2020 WL 4569990, at *2 n.2 (D. Conn. Aug. 7, 2020) ("The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration."); *Doctor's Assocs., Inc. v. Distajo*, 944 F. Supp. 1010, 1013–14 (D. Conn. 1996) (similar), *aff'd* 107 F.3d 126

[3] State-law principles of contract formation govern the question whether the parties entered into a valid agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Per the terms of the Arbitration Agreement, New York State law applies. Donnelly Decl. at Ex. B.

(2d Cir. 1997).

Where both elements are met, the Court must compel arbitration according to the agreement's terms. *ACE Cap. Re Overseas Ltd. v. Cent. United Life Insu. Co.*, 307 F.3d 24, 35-36 (2d Cir. 2002); *see Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989) (FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.").

Here, because the parties entered an enforceable agreement to arbitrate the claims alleged in Plaintiff's Complaint, the Court should grant NDR's Motion to Compel and order Plaintiff to arbitrate her claims.

**B. Plaintiff Is Bound By The Terms of Service And Arbitration Agreement**

Online agreements to arbitrate such as the one Plaintiff entered into with NDR are regularly enforced where: "(1) a 'reasonably prudent' person would be on inquiry notice of the terms, and (2) the user unambiguously manifests assent 'through conduct that a reasonable person would understand to constitute assent.'" *Edmundson* 85 F.4th at 703 (citations omitted). Both inquiries are measured by an objective standard. *Id*. The Second Circuit views a reasonably prudent user as someone who "is not a complete stranger to computers or smartphones, having some familiarity with how to navigate to a website or download an app." *Id.* at 704 (citation omitted). "Whether a reasonably prudent user would be on inquiry notice turns on the [c]larity and conspicuousness of arbitration terms, [and] in the context of web-based contracts [], clarity and conspicuousness are a function of the design and content of the relevant interface." M*eyer v. Uber Tech., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (citations and quotations omitted).

Arbitration Agreements like the one Plaintiff entered into with NDR "are usually found 'where a website's Terms of Service are . . . posted on the website via a hyperlink at the bottom of the screen' and a user's assent is given merely by his or her use of the website and nothing more."

*Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)). Courts have enforced agreements similar to the one on NDR's website. *See, e.g., Ticketmaster L.L.C. v. RMG Technologies, Inc.,* 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (plaintiff was "highly likely to succeed in showing that Defendant received notice of the Terms of Use and assented to them by actually using the website" where site displayed a warning that "Use of this website is subject to express *Terms of Use* " and "[t]he underlined phrase 'Terms of Use' is a hyperlink to the full Terms of Use"); *Sw. Airlines Co. v. BoardFirst, L.L.C.,* No. 3:06–CV–0891–B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007); *Cairo, Inc. v. Crossmedia Servs., Inc.,* No. C 04–04825, 2005 WL 766610, at *5 (N.D. Cal. Apr. 1, 2005); *Ticketmaster Corp. v. Tickets.com, Inc.,* No. CV 997654, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003). *Cf. Pollstar v. Gigmania, Ltd.,* 170 F. Supp. 2d 974, 982 (E.D. Cal. 2000).

#### 1. Plaintiff Was on Inquiry Notice of the Arbitration Agreement Because a Reasonably Prudent User Would Have Seen NDR's Terms of Service

A reasonably prudent website user is bound to a website's Terms of Service, "where the terms are presented in a clear and conspicuous way." *Edmundson* 85 F.4th at 704. Indeed, where the terms are "'linked' on an 'uncluttered' interface and temporally and 'spatially coupled with the mechanism for manifesting assent,' and the user does not need to scroll beyond what is immediately visible to find the terms . . . the interface provided reasonably conspicuous notice of the existence of contractual terms." *Id.* (quoting *Meyer*, 868 F.3d at 78-79). In other words, "[a]s long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms." *Meyer*, 868 F.3d at 78 ("That the Terms of Service were available only by hyperlink does not preclude a determination of reasonable notice".); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("[F]or those to

whom the internet is in an indispensable part of daily life, clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else.").

The NDR Website provided reasonably prudent users, such as Plaintiff, with inquiry notice of the Arbitration Agreement contained in its Terms of Service. Donnelly Decl. at ¶5-7. There are "no particular features that must be present to satisfy the reasonably conspicuous standard," *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 842 (2d Cir. 2021), because "there are infinite ways to design a website or smartphone application," *Meyer*, 868 F. 3d at 75. The NDR Website is demonstrably uncluttered, as the Terms of Site hyperlink is prominently featured in large, white font and stands out on a dark blue background, clearly visible to the Plaintiff (and others who visit the NDR Website) on the landing page and any page she would have accessed. *See Graham v. Bloomberg L.P.*, No. 22-CV-7015 (VSB), 2023 WL 6037974, at *5 (S.D.N.Y. Sept. 15, 2023) ("[T]he font, color, and overall design of the [website] helped to put [plaintiff] on inquiry notice. The text hyperlink directing a user to [defendant's] Terms of Service Page is underlined and in black text on a white background."); *Edmundson* 85 F.4th at 706 ("Although the hyperlinks to [defendant's] terms are in a smaller font relative to other text on the [defendant's] Widget, they are set apart from surrounding information by being underlined and in a color that stands in sharp contrast to the color of the interfaces' backgrounds."); *Meyer* 868 F.3d at 78 ("The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."); Donnelly Decl. at ¶7.

Plaintiff, having admittedly accessed the NDR Website several times over the course of fourteen months (Compl. at ¶ 55), is a reasonably prudent user who is "not a complete stranger to computers." *Edmundson* 85 F.4th at 703. Thus, because the Terms of Service put Plaintiff on

inquiry notice of the Arbitration Agreement, the agreement governs this dispute. *Id.* at 706–07 ("[A] reasonably prudent user would understand that the terms presented on the interface govern the user's future relationship with [defendant]."). Further, Plaintiff is bound by NDR's Terms of Service and the Arbitration Agreement contained in those terms regardless of whether or not Plaintiff chose to read those terms. *Meyer* 868 F.3d at 79 ("As long as the hyperlinked text was itself reasonably conspicuous—and we conclude that it was—a reasonably prudent smartphone user would have constructive notice of the terms. While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice."); *Fteja* 841 F. Supp. 2d at 839 ("Whether or not the consumer bothers to look [at the Terms of Service] is irrelevant.").

**2. Plaintiff Manifested Her Assent To NDR's Terms of Service and Arbitration Agreement.**

Courts will find an unambiguous manifestation of assent when "the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound . . . . In other words, where an internet or smartphone user does not explicitly say 'I agree' to the contractual terms, a court must determine whether a reasonably prudent user would understand his or her conduct to constitute assent to those terms." *Edmundson* 85 F.4th at 704 (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128 (2d Cir. 2012)).

NDR's Terms of Service informed Plaintiff that "[a]s a condition of using this Site," Plaintiff "Agree[d]" to NDR's Arbitration Agreement. Donnelly Decl. at Ex. B. After being so informed, Plaintiff admittedly visited the NDR Website multiple times over the course of at least fourteen months, without attempting to waive the Arbitration Agreement. ("Plaintiff has visited the Website multiple times—including as long ago as November 2022 and as recently as January 2024—on her desktop browser;" "Since at least November 2022, if not earlier, Defendant has

incorporated the code of the Tracker into the code of its Website. Thus, when Plaintiff visited the Website, the Website caused the Tracker to be installed on Plaintiff's and other users' browsers;" ". . . Plaintiff, like all other members of the Class Members, visited the Website . . . ."). Compl. at ¶¶ 41, 55, 65.

Indeed, Plaintiff cannot dispute she manifested assent to the Terms of Service by repeatedly visiting the Website. *Salameno v. Gogo Inc.*, No. 16-CV-0487, 2016 WL 4005783, at *5 (E.D.N.Y. July 25, 2016) (granting motion to compel arbitration where the "plaintiffs here were repeatedly warned that by using [defendant's website] they were agreeing to the terms of use, and they were repeatedly presented with a hyperlink to those terms."); *Ticketmaster Corp.*2003 WL 21406289, at *2 (finding binding contract where defendant was put on reasonable notice of "terms of use" of website, plaintiff having "placed in a prominent place on the home page the warning that proceeding further binds the user to the conditions of use" and defendant accessed the site repeatedly); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 296 Ill. Dec. 258, 835 N.E.2d 113, 121–122 (2005) (arbitration clause enforceable where user was presented with hyperlink marked "Terms and Conditions of Sale" and the phrase "[a]ll sales are subject to [Defendant's] Term[s] and Conditions of Sale" appeared on multiple successive webpages); *Gorny v. Wayfair Inc.*, No. 18 C 8259, 2019 WL 2409595, at *6 (N.D. Ill. June 7, 2019) ("[U]ndisputed evidence establishes that Gorny accessed Wayfair.com repeatedly . . . . Gorny's complaints that he did not actually read the terms are of no consequence . . . . Likewise, his suggestion that he should not be held to the contract because he never physically signed it is unsupported by law.").

By repeatedly visiting and using the Website, Plaintiff was repeatedly warned that her use constituted assent to the Terms of Service and the Arbitration Agreement. Accordingly, Plaintiff manifested her assent to be bound by same. *See Edmundson*, 85 F.4th at 708 ("[W]e have only

required that the interface 'make clear' to the reasonable internet user that a specific 'click' signifies assent.") (citation omitted); *Maldonado v. National Football League*, 1:22-CV-02289, 2023 WL 4580417 (S.D.N.Y. July 18, 2023) ("Courts have made it clear that an electronic click can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.") (citation omitted); *Fteja*, 841 F. Supp. 2d at 840 ("Here, [plaintiff] was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough.").

Accordingly, NDR provided prominent and conspicuous notice of and access to the Terms of Service and Arbitration Agreement on multiple pages of its Website. Plaintiff, a reasonably prudent user, had access to the Terms of Service, and manifested her assent to the Terms of Service by using the Website. Accordingly, NDR and Plaintiff entered into a binding Arbitration Agreement and Plaintiff is bound by its terms.

### C. The Arbitration Agreement Governs Plaintiff's Claim

The Arbitration Agreement governs "any disputes pertaining to information presented herein and use of the Site." Donnelly Decl. at Ex. B. Plaintiff's claim that Defendant used "pen register" technology on its Website in violation of the CIPA plainly arises from her multiple visits to the NDR Website between November 2022 and January 2024. *See generally* Compl. Plaintiff's claim admittedly arises solely from her use of the NDR Website and is therefore exclusively governed by the Arbitration Agreement. Arbitration provisions applying to "any claim or controversy arising out of or relating to [an] agreement" are "the paradigm of a broad [arbitration] clause," and are therefore interpreted broadly by courts in this Circuit. *Sportvision, Inc. v. MLB Advanced Media, LP*, 2020 WL 1957450, at *5 (S.D.N.Y. 2020) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)).

Further, Plaintiff also agreed to "resolve disputes that may arise between us by arbitration on an individual basis instead of by class actions or jury trials." Donnelly Decl. at Ex. B. Class action waiver provisions of this kind are enforceable. "In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). Because the Arbitration Provision is governed by the FAA, and Plaintiff agreed to the Arbitration Provision, Plaintiff is required to arbitrate her claims on an individual, non-class basis.

## IV. ALL PROCEEDINGS SHOULD BE STAYED PENDING ARBITRATION OF PLAINTIFF'S CLAIMS

NDR seeks a stay of the proceedings while Plaintiff arbitrates her claim against NDR. Upon request and a referral to arbitration, a stay is mandatory. *Graham v. Bloomberg* L.P., No. 22-cv-7015 (VSB), 2023 WL 6037974, at *5 (citing *Katz v. Cellco* 794 F.3d 341, 347 (2d Cir. 2015). *See also Lewis v. Samsung*, Case No. 1:22-cv-10882 (JLR), 2023 WL 7623670, at *11 (S.D.N.Y. Nov. 14, 2023) ("The FAA 'requires a stay of proceedings when all claims are referred to arbitration and a stay requested.'") (citing *Katz*, 794 F.3d at 343).

## V. CONCLUSION

For the reasons set forth above, Defendant respectfully requests the Court grant its Motion to Compel Arbitration; issue an order compelling Plaintiff to arbitrate her claim on an individual basis before the AAA; stay this action pending resolution of the parties' arbitration; and award such further relief as this Court deems proper.

Dated: April 25, 2024 By: */s/ Beth-Ann E. Krimsky*

**GREENSPOON MARDER LLP**
BETH-ANN E. KRIMSKY
NY Bar No. 2321115; FL Bar No. 968412
Email: beth-ann.krimsky@gmlaw.com
Email: clemencia.corzo@gmlaw.com
JESSICA B. SANDER
NY Bar No. 4750725; FL Bar No. 43154

Primary E-mail: jessica.sander@gmlaw.com
Secondary E-mail: gabby.mangar@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 524-2427

*Attorneys for Defendant, National Debt Relief LLC*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this **25th** day of **April**, 2024, a copy of the foregoing Defendant's Memorandum of Law in Support of its Motion to Compel Arbitration was filed with the Clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Beth-Ann E. Krimsky*_____
BETH-ANN E. KRIMSKY