**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GILDA VINCENT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL DEBT RELIEF LLC,<br><br>Defendant. | Case No. 1:24-cv-00440-LJL<br><br>Honorable Judge Lewis J. Liman |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Dated: May 9, 2024

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com
mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Emily A. Horne (*Pro Hac Vice Forthcoming*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Emai: ehorne@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. PLAINTIFF'S CLAIMS CANNOT BE COMPELLED TO ARBITRATION BASED ON AN UNENFORCEABLE BROWSEWRAP AGREEMENT ..... 3

A. Defendant's Terms Of Service Hyperlink Is An Unenforceable Browsewrap Agreement ..... 3

B. Defendant's Authorities Concerning Clickwrap Agreements And Actual Notice Do Not Change The Analysis ..... 7

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Benson v. Double Down Interactive, LLC*,
798 F. App'x 117 (9th Cir. 2020) ........ 8

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y 2015) ........ 3, 5, 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 2, 3, 7, 8

*Cairo, Inc. v. Crossmedia, Servs., Inc.*,
2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ........ 10

*Carter v. Ralph Laruen Corp.*,
2023 WL 4684559 (S.D.N.Y. July 20, 2023) ........ 6

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ........ 8, 9

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (2d Cir. 2012) ........ 8, 9

*Gorny v. Wayfair Inc.*,
2019 WL 2409595 (N.D. Ill. June 7, 2019) ........ 8, 9

*Graham v. Bloomberg L.P.*,
2023 WL 6037974 (S.D.N.Y. Sept. 15, 2023) ........ 8, 9

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y 2009) ........ Passim

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010) ........ 7

*Hubbert v. Dell Corp.*,
359 Ill. App. 3d 976 (2005) ........ 10

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ 4

*Maldonado v. National Football League*,
2023 WL 4580417 (S.D.N.Y. July 28, 2023) ........ 8, 9

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017) .................... 2, 8, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .................... 2

*Motise v. America Online, Inc.*,
346 F. Supp. 2d 563 (S.D.N.Y. 2004) .................... 7

*Nguyen v. Barnes & Noble, Inc.*,
2012 WL 3711081 (C.D. Cal. Aug. 28, 2012) .................... 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .................... 1, 4

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y 2019) .................... 2, 8

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .................... 1, 3, 8

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018) .................... 8, 9

*Register.com, Inc. v. Verio*,
356 F.3d 393 (2d Cir. 2004) .................... 2

*Salameno v. Gogo Inc.*,
2016 WL 4005783 (E.D.N.Y. July, 25, 2016).................... 8, 9

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) .................... 2

*Southwest Airlines Co. v. BoardFirst, L.L.C.*,
2007 WL 4823761 (N.D. Tex. 2007) .................... 10

*Specht v. Netscape Communications Corp.*,
306 F.3d 17 (2d Cir. 2002) ....................Passim

*Strehl v. Guitar Center, Inc.*,
2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) .................... 4

*Ticketmaster Corp. v. Tickets.com, Inc.*,
2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) (enforcing .................... 10

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) .................... 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................................ 7

Plaintiff Gilda Vincent ("Plaintiff") respectfully submits this opposition to Defendant National Debt Relief LLC's ("Defendant" or "National Debt Relief") Motion to Compel Arbitration (ECF No. 17) (the "Motion" or "MTC").

## INTRODUCTION

Defendant's motion is meritless. Defendant seeks to compel Plaintiff's claims to arbitration based on a browsewrap agreement, which courts in this Circuit and others have uniformly "*refused to enforce*." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (emphasis added) (citing *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (Sotomayor, J.)). This is because a "browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly." *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (cleaned up). Rather, "a party instead gives his assent simply by using the website." *Id.* "Thus, when terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to [enforce the agreement]." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016).

Here, Defendant's Terms of Service hyperlink is buried at the bottom of the page and cannot be seen without scrolling *eight pages down* to the bottom of the screen. *See* Declaration Emily A. Horne ("Horne Decl.") ¶ 3; Donnelly Decl. Ex. A. Even if the user scrolled down to the bottom and noticed the language referring to the Terms of Site, the language alongside the hyperlink does *not* give the user notice that using the site will constitute acceptance of the terms. *See* Horne Decl. ¶ 5; Donnelly Decl. Ex. A. Thus, Defendant's browsewrap agreement is insufficient for notice of or assent to the Terms of Services, and Plaintiff's claims cannot be compelled to arbitration under black-letter law.

This is not a close call. Defendant's contentions are flatly controverted by binding Second Circuit law. Its arguments have no legal basis whatsoever.

**LEGAL STANDARD**

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "To determine whether arbitration must be compelled, a court must resolve two issues: whether the parties agreed to arbitrate, and whether the dispute falls within the scope of the arbitration agreement." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 263 (E.D.N.Y 2019).

When determining whether a valid and enforceable contract to arbitrate has been established for the purposed of the Federal Arbitration Act ("FAA"), federal courts "should generally apply state-law principles to the issue of contract formation." *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 27 (2d Cir. 2002) (Sotomayor, J.). "To form a contract, there must be 'mutual manifestation of assent, whether by written or spoken word or by conduct.'" *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Specht*, 306 F.3d at 29). While "the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio*, 356 F.3d 393, 403 (2d Cir. 2004).

Thus, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (emphasis added).[1]

[1] "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer*, 868 F.3d at 74 (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).

# ARGUMENT

## I. PLAINTIFF'S CLAIMS CANNOT BE COMPELLED TO ARBITRATION BASED ON AN UNENFORCEABLE BROWSEWRAP AGREEMENT

### A. Defendant's Terms Of Service Hyperlink Is An Unenforceable Browsewrap Agreement

There are generally three types of Internet contracts. The first type is a "clickwrap" agreement, "which typically requires users to click an 'I agree' box after being presented with a list of terms or conditions of use." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016). The second type is a "hybridwrap" agreement, where a user assents to a contract by taking some action (*e.g.*, clicking a button) and there is language linking that action to the assent to the terms. *See id.* at 236 (determining hyperlink where user was told "[b]y placing your order, you agree to Amazon.com's privacy notice and conditions of use" was a "hybrid between a clickwrap and a browsewrap agreement").

The third type—and the one relevant to the instant Motion—is a "browsewrap" agreement, which "involve[s] terms and conditions posted via hyperlink, commonly at the bottom of the screen, and do[es] not request an express manifestation of assent." *Id.* (cleaned up). "Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Berman*, 30 F.4th at 856; *see also Nicosia*, 834 F.3d at 233 ("[W]hen terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to find constructive notice."). "For an internet browsewrap contract to be binding, consumers must have reasonable notice of a company's 'terms of use' and exhibit 'unambiguous assent' to those terms." *Berkson v. Gogo LLC*, 9. F. Supp. 3d 359, 403 (E.D.N.Y 2015) (quoting *Specht*, 306 F.3d at 35). The burden is on Defendant, as "the party seeking

arbitration to show notice and assent." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023).

Defendant's Terms of Service hyperlink is a classic browsewrap agreement. This is not even a case where the hyperlink is in "close proximity to the buttons a user must click on to complete an online purchase." *Nguyen*, 763 F.3d at 1177. Instead, the hyperlink is buried *nine screens down* at the bottom of the Website, meaning the hyperlink is not present on users' screens when they access the Website. Horne Decl. ¶ 3. Users see the following screen when they first access the Website:




**Screen 1**

*Id*. This is the exact type of agreement "courts have refused to enforce" because "the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." *Nguyen*, 763 F.3d at 1177; *see also Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 368 (E.D.N.Y 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (declining to enforce browsewrap agreement where user "could not even see the link to [the terms and conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase"); *Strehl v. Guitar Center, Inc.*, 2023 WL 9700041, at *6 (C.D.

Cal. Nov. 3, 2023) ("If a purchaser clicks the first 'Complete Order' button, then Defendant's Purchase Terms hyperlink would constitute a browsewrap agreement. The hyperlink to the Purchase Terms would be located at the bottom of the screen, where it is reasonable likely that it would not be visible to the user unless the user scrolled down or zoomed out.").

Further, even if Plaintiff and other users were on notice of the Terms of Service hyperlink at the bottom of the screen (and they were not), they did not "unambiguous[ly] assent to those terms." *Berkson*, 97 F. Supp. 3d at 395 (cleaned up). To wit, *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y 2009), *aff'd*, 380 Fed. Appx. 22 (2d Cir. 2010) is instructive (and binding). In that case, like here the link to the website's Terms and Conditions "could not [be seen] without scrolling down to the bottom of the screen." *Id.* at 367. Moreover, "the notice that 'Entering this Site will constitute your acceptance of these Terms and Conditions' was only available *within* the Terms and Conditions"—as opposed to in the language alongside the hyperlink. *Id.* (emphasis added). Accordingly, the *Hines* court refused to enforce the browsewrap agreement.

*Hines* mandates the same result here. Even if a user scrolled nine screens down to the bottom of the Website, the hyperlink does not inform users that using the site will constitute acceptance of the terms. The hyperlink merely says "Terms of Site":




**Screen 9**

Horne Decl. ¶ 3. And, the small print at the bottom of Defendant's Website (which is also not binding) states: "This website uses 'cookies' … By continuing to browse our site you are consenting to their use. *For more information see our Terms and Privacy Policy*":

> **© 2024, National Debt Relief, All Rights Reserved.**
>
> Please note that all calls with the company may be recorded or monitored for quality assurance and training purposes. *Clients who are able to stay with the program and get all their debt settled realize approximate savings of 46% before fees, or 25% including our fees, over 24 to 48 months. All claims are based on enrolled debts. Not all debts are eligible for enrollment. Not all clients complete our program for various reasons, including their ability to save sufficient funds. Estimates based on prior results, which will vary based on specific circumstances. We do not guarantee that your debts will be lowered by a specific amount or percentage or that you will be debt-free within a specific period of time. We do not assume consumer debt, make monthly payments to creditors or provide tax, bankruptcy, accounting or legal advice or credit repair services. Not available in all states. Please contact a tax professional to discuss tax consequences of settlement. Please consult with a bankruptcy attorney for more information on bankruptcy. Depending on your state, we may be available to recommend a local tax professional and/or bankruptcy attorney. Read and understand all program materials prior to enrollment, including potential adverse impact on credit rating.
>
> This website uses "cookies" to enhance your browsing experience and for marketing and tracking purposes. By continuing to browse our site you are consenting to their use. For more information see our Terms and Privacy Policy.

*Id.* ¶ 5 (emphasis added).

Instead, it is only *within* the Terms of Service that Defendant tells users that "USE OF THE SITE SHALL BE DEEMED TO BE YOUR AGREEMENT TO ABIDE BY EACH OF THE TERMS SET FORTH BELOW." Horne Decl. ¶ 5; Donnelly Decl. Ex. B. As the Second Circuit affirmed, that is insufficient for assent to the Terms of Service. *Hines*, 668 F. Supp. at 367; *see also Carter v. Ralph Laruen Corp.*, 2023 WL 4684559, at*8 (S.D.N.Y. July 20, 2023) (terms were

not enforceable where the language surrounding the hyperlink "did not clearly signal[] to Plaintiff that, by continuing … she [would] be agreeing to the terms contained in [the] accompanying hyperlink.") (cleaned up); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077 (C.D. Cal. 2021) (declining to find consent to privacy policy where "Lululemon did not ask Yoon to agree to the Privacy Policy; rather, Lululemon instructed Yoon that she could 'learn more' about the Privacy Policy when she placed her order."); *Berman*, 30 F.4th at 858 ("Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent to those terms and conditions.").

Accordingly, under binding Second Circuit precedent, Defendant has not shown "that a user would have had actual or constructive knowledge of the Terms [of Service]," nor that users manifest assent to the Terms of the Service even if they do have notice. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010); *see also Specht*, 306 F.3d at 32 ("[A] reference to the existence of … terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice"); *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563, 565 (S.D.N.Y. 2004) ("The Second Circuit seems to require that the license terms appear on the screen, in view of the user, for the user to be on notice of them."). Accordingly, Plaintiff cannot be compelled to arbitrate her claims based on Defendant's inconspicuous browsewrap agreement.

### B. Defendant's Authorities Concerning Clickwrap Agreements And Actual Notice Do Not Change The Analysis

Desperate to send Plaintiff's claims to arbitration, Defendant makes several arguments in support of its Motion. Each is without merit.

*First*, Defendant contends that Plaintiff was on inquiry notice of the Terms of Service by virtue of "access[ing] the NDR Website several times over the course of fourteen months." MTC at 11. But being bound by inconspicuous hyperlinks simply by accessing a website is the exact type of situation where courts have generally refused to enforce an arbitration agreement. *See*,

*e.g.*, *Hines*, 668 F. Supp. 2d at 367; *Berman*, 30 F.4th at 856; *Nicosia*, 834 F.3d at 233. Moreover, as courts have held, "[r]epeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first." *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-20 (9th Cir. 2020); *see also Specht*, 306 F.3d at 32 ("Internet users may have, as defendants put it, as much time as they need to scroll through multiple screens on a webpage, but there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there.") (cleaned up).

*Second*, Defendant cites cases where courts found users were on constructive notice of the terms and conditions hyperlink. Crucially, however, most of these cases involve disputes with *clickwrap or hybridwrap* agreements. *See*, *e.g.*, *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (hybridwrap agreement); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (2d Cir. 2012) (hybridwrap agreement); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 706 (2d Cir. 2023) (clickwrap agreement); *Graham v. Bloomberg L.P.*, 2023 WL 6037974, at *4 (S.D.N.Y. Sept. 15, 2023) (hybridwrap agreement); *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *1 (N.D. Ill. June 7, 2019) (hybridwrap agreement); *Maldonado v. National Football League*, 2023 WL 4580417, at *3 (S.D.N.Y. July 28, 2023); *Salameno v. Gogo Inc.*, 2016 WL 4005783, at *3 (E.D.N.Y. July, 25, 2016) (hybridwrap agreement); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (clickwrap agreement).

As noted above, unlike the browsewrap agreement here, both clickwrap and hybridwrap agreements require something more than passively "using the services of [or] obtaining information from … the website." *Berkson*, 97 F. Supp. 3d at 395; *see also id.* at 394 (noting clickwrap agreements require assent "by which a user must click 'I agree'"); *Nicosia*, 384 F. Supp. 3d at 266 (cleaned up) (noting hybridwrap agreements "prompt the user to manifest their assent to

particular terms by engaging in some dual-purpose action, such as creating an account, executing a purchase order, or downloading an application"). And, in cases where the clickwrap and hybridwrap agreements have been found binding, the hyperlinks are displayed conspicuously, clearly, and do not require users to scroll down nine screens to see them.

Defendant's authorities concerning clickwrap and hybridwrap agreements thus have no applicability to the browsewrap agreement here, which has no indica of constructive notice. *Compare* Argument § I.A., *supra*; *with Meyer*, 868 F.3d at 78 ("The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."); *Fteja*, 841 F. Supp. 2d at 835 (language next to the "Sign Up" button read, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"); *Edmundson*, 85 F.4th at 705 (The hyperlink was "visible at once, and the user [did] not need to scroll beyond what is immediately visible to find notice of Klarna's terms") (cleaned up); *Graham*, 2023 WL 6037974, at *4 ("Bloomberg's entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service.") (cleaned up); *Gorny*, 2019 WL 2409595, at *5 (enforcing arbitration agreement where "the following statement appeared in clear, conspicuous text immediately below the order button: By placing an order, you are agreeing to our Privacy Policy and Terms of Use") (cleaned up); *Maldonado*, 2023 WL 4580417, at *3 ("[T]he hyperlink appears directly below the Create An Account and Complete Order assent buttons, and Plaintiffs were informed that by placing an order or by signing up, you agree to our Terms of Use.") (cleaned up); *Salameno*, 2016 WL 4005783, at *3 (enforcing arbitration clause where language directly above "Next" button stated "By clicking 'NEXT' I agree to the terms of use and privacy policy"); *and Plazza*, 289 F. Supp. 3d at 548 ("Airbnb presented an actual scroll box with the modified TOS and would not allow users to access any part of Airbnb's website or continue using the platform until they indicated their assent to the TOS.").

*Third*, several of Defendant's authorities involve situations where language *near or next to the hyperlink* informed users that taking an action (*e.g.*, making a purchase) would constitute assent to the terms and conditions. *See*, *e.g.*, *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984 (2005) ("[O]n three of the defendant's Web pages that the plaintiffs completed to make their purchases, the following statement appeared: All sales are subject to Dell's Terms and Conditions of Sale.") (cleaned up); *Cairo, Inc. v. Crossmedia, Servs., Inc.*, 2005 WL 756610, at *2, *4-5 (N.D. Cal. Apr. 1, 2005) (enforcing forum selection clause in website's terms of use where every page on the website had a textual notice that read: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site"); *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (enforcing agreement where "users of ticketmaster.com have had to affirmatively agree to the Terms of Use as part of the procedure to set up an account").[2]

*Finally*, some of Defendant's authorities involve situations where, unlike here, the parties had *actual knowledge* of the terms and conditions. *See*, *e.g.*, *Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *6 (N.D. Tex. 2007) ("There is no dispute that BoardFirst has had actual knowledge of Southwest's Terms…"); *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) (enforcing agreement where website operator "placed in a prominent place on the home page the warning that proceeding further binds the user to the conditions of use" that "could not be missed").

Thus, Defendant is simply wrong that "[c]ourts have enforced agreements similar to the one on NDR's website." MTC at 10. On the contrary, the Second and Ninth Circuits—among

[2] Further, in *Ticketmaster v. RMG*, "the defendant did not even contest whether it was on notice of the Terms of Use, arguing instead that the Terms of Use were too uncertain to be enforceable." *Nguyen v. Barnes & Noble, Inc.*, 2012 WL 3711081, at *4 (C.D. Cal. Aug. 28, 2012), *aff'd*, 763 F.3d 1171 (9th Cir. 2014) (distinguishing *Ticketmaster v. RMG*).

others—have repeatedly *refused* to enforce browsewrap agreements like Defendant's (Argument § I.A, *supra*), and Defendant's cited authorities do not demonstrate otherwise.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Dated: May 9, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com
mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Emily A. Horne (*Pro Hac Vice Forthcoming*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Emai: ehorne@bursor.com

*Attorneys for Plaintiff*