UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GILDA VINCENT, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

NATIONAL DEBT RELIEF LLC,

Defendant.

Case No. 1:24-cv-00440-LJL

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

Defendant National Debt Relief LLC ("NDR") respectfully submits this reply memorandum of law in further support of its Motion to Compel Arbitration and to Stay Proceedings ("Motion").

## ARGUMENT

### I. Plaintiff's Memorandum in Opposition to NDR's Motion Does Not Change The Fact That Plaintiff Is Bound By The Arbitration Agreement

Plaintiff was on inquiry notice of NDR's Terms of Site (the "Terms of Service" and/or the "Terms"), the Terms which include the parties' agreement to arbitrate (the "Arbitration Agreement"), and which are prominently displayed on all landing pages of NDR's Website (the "NDR Website"). Plaintiff unambiguously and repeatedly manifested her assent to the Terms by continually visiting and using NDR's Website on multiple occasions over the course of fourteen months. Under prevailing precedent, those are the only facts relevant to granting NDR's Motion to Compel Arbitration and Stay Proceedings, and Plaintiff does not dispute them. Instead, Plaintiff's opposition to NDR's Motion is little more than a game of smoke and mirrors, focused



57586438v1

largely on issues and arguments having nothing whatsoever to do with those dispositive facts that requires arbitration of this dispute.

Plaintiff does not contest that the Arbitration Agreement covers her claims. Nor does she dispute that the Arbitration Agreement requires NDR Website visitors like herself to arbitrate such claims on an individual basis. Finally, Plaintiff does not dispute that, if this Court finds she entered a valid agreement to arbitrate (which it should), the proceedings should be stayed pending resolution of that arbitration. By failing to dispute these points, she "concede[s]" them. *DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997); *see, e.g., Felske v. Hirchmann*, 2012 WL 716632, at *3 (S.D.N.Y. 2012) ("A Plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

Most strikingly, nowhere in her Opposition Brief ("Opposition") does Plaintiff deny personally being aware of or having been placed on notice of NDR's Terms of Site. Nor does she deny having reviewed the Terms of Site during any of the many visits to NDR's Website she admits to making over a fourteen-month period. Instead, she resorts to nitpicking the placement of the Terms of Site hyperlink on NDR's Website, then argues that *other* visitors to NDR's Website were not placed on either actual or inquiry notice. *See* Opposition at 5-7. Moreover, she argues that if a visitor fails to actually review the Terms of Site (regardless of whether the visitor was on inquiry notice of them) they cannot be bound by those terms. *Id*. at 5. However, actual notice of NDR's Terms of Service is irrelevant where, as here, Plaintiff was on inquiry notice of those Terms, (indeed, as noted, she does not deny being placed on inquiry notice) and assented to those Terms through her conduct and repeated visits to the NDR Website. *See Edmundson v. Klarna*, 85 F.4th 695, 703 (2d Cir. 2023) (enforcing web-based arbitration agreement where "(1) a 'reasonably prudent' person would be on inquiry notice of the terms, and (2) the user unambiguously manifests

assent 'through conduct that a reasonable person would understand to constitute assent.'") (citations omitted). As such, the Arbitration Agreement is valid and enforceable, and Plaintiff must be compelled to arbitrate her claims.

**A. Plaintiff Was on Inquiry Notice of the Arbitration Agreement**

Plaintiff ignores that inquiry notice is sufficient to require Plaintiff to abide by the Arbitration Agreement contained in NDR's Terms of Service. *Edmundson*, 85 F.4th at 703. Instead, Plaintiff seeks to direct attention from the only relevant facts by criticizing NDR's interface, arguing "Courts are more reluctant to enforce" browse wrap agreements. Opposition at 3. But this is unresponsive to NDR's argument or the applicable determinative facts. The pertinent issue is whether Plaintiff was on inquiry notice (something Plaintiff does not dispute in her Opposition), which "depend[s] on the design and content of the website and the agreement's webpage." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("In short, the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of the browsewrap agreement"); *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017) ("There is an evolving body of caselaw regarding whether the terms and conditions in browsewrap agreements are enforceable, often turning on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage.").

As the Terms of Service were reasonably conspicuous, Plaintiff is bound to the Arbitration Agreement, regardless of how she believes NDR's Website interface should be laid out. *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("As long as the hyperlinked text was itself reasonably conspicuous—and we conclude that it was—a reasonably prudent smartphone user would have constructive notice of the terms. While it may be the case that many users will not

bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice.").

Further, contrary to Plaintiff's representations, arbitration agreements, like the one Plaintiff entered into with NDR, are common, and "are usually found 'where a website's Terms of Service are . . . posted on the website via a hyperlink at the bottom of the screen' and a user's assent is given merely by his or her use of the website and nothing more." *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)). Also contrary to Plaintiff's representations, courts have enforced provisions in browsewrap agreements. *See, e.g., Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829 (S.D.N.Y. 2012) (enforcing forum selection clause in hybrid browsewrap agreement, where hyperlinked terms of service accompanied statement that "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service."); *Ticketmaster L.L.C. v. RMG Technologies, Inc.,* 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (plaintiff was "highly likely to succeed in showing that Defendant received notice of the Terms of Use and assented to them by actually using the website" where site displayed a warning that "Use of this website is subject to express *Terms of Use*" and "[t]he underlined phrase 'Terms of Use' is a hyperlink to the full Terms of Use"); *Cairo, Inc. v. Crossmedia Servs., Inc.,* No. C 04–04825, 2005 WL 766610, at *5 (N.D. Cal. 2005) (enforcing forum selection clause found in website Terms of Use); *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 982 (E.D. Cal. 2000) ("The court hesitates to declare the invalidity and unenforceability of the browse wrap license agreement at this time. Taking into consideration the examples provided by the Seventh Circuit—showing that people sometimes enter into a contract by using a service without first seeing the terms—the browser wrap license agreement may be arguably valid and enforceable.").

Indeed, Plaintiff's own Opposition supports and confirms the enforceability of the Arbitration Agreement. The images Plaintiff chose to include in the Opposition confirm that NDR's Terms of Service were sufficiently clear and conspicuous to put Plaintiff on inquiry notice. Opposition at 6. As Plaintiff's own Opposition shows, the NDR Terms of Site hyperlink is highlighted in white font against a dark background on the home screen, bringing website users to the Terms of Service, which Plaintiff concedes puts users on notice that "USE OF THE SITE SHALL BE DEEMED TO BE YOUR AGREEMENT TO ABIDE BY EACH OF THE TERMS SET FORTH BELOW." Opposition at 6. The interface is uncluttered, presenting the terms to the customer when the customer first enters the NDR Website. *See id.* Accordingly, this Arbitration Agreement is enforceable. *See Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4259845, at *5 (D.N.J. 2018) (Enforcing website agreement where the agreement "displayed onscreen in a manner similar to a 'browsewrap agreement,' in which 'the terms of use are contained in a hyperlink, but the user can utilize a provider's services without ever knowing that such services are being provided subject to the terms and conditions.'") (citations omitted).

Moreover, Plaintiff herself points out that additional provisions on the NDR Website homepage notify users, including Plaintiff, that use of the NDR Website is subject to the Terms of Service: ""By continuing to browse our site you are consenting to their use. For more information see our Terms and Privacy Policy.'" Opposition at 6. This further evidences that Plaintiff was notified of the Terms of Service. *See Small Just. LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 197 (D. Mass. 2015), *amended*, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. 2015), and *aff'd*, 873 F.3d 313 (1st Cir. 2017) ("At the other end of the spectrum, if a website notifies a user that his continued use of a site indicates his assent to the terms, then a browsewrap agreement is more likely to be enforced."); *Nguyen,* 763 F.3d at 1177 ("[W]here the website contains an explicit

textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements."); *see also Cairo, Inc. v. Crossmedia Servs., Inc.,* No. 04–04825, 2005 WL 756610, at *2, *4–5 (N.D. Cal. 2005) (enforcing forum selection clause in website's terms of use where every page on the website had a textual notice that read: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site, which prohibit commercial use of any information on this site."). As a result, the Arbitration Agreement should be enforced.

Lastly, Plaintiff does not contest that she is a reasonably prudent user who is "not a complete stranger to computers." *Edmundson*, 85 F.4th at 703. Accordingly, the Terms of Service put Plaintiff on inquiry notice of the Arbitration Agreement and therefore the Arbitration Agreement governs this dispute. *Id.* at 706–07 ("[A] reasonably prudent user would understand that the terms presented on the Interface govern the user's future relationship with [defendant].").

**B. Plaintiff Unambiguously Manifested Assent to the Arbitration Agreement by Repeatedly Visiting and Using the NDR Website**

Plaintiff's claim that she did not manifest assent to the Terms of Service is meritless. Plaintiff ignores that manifestation of assent to the terms does not require Plaintiff to "clearly signal" assent (Opposition at 5); rather, assent will be found when "the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound . . . . In other words, where an internet or smartphone user does not explicitly say 'I agree' to the contractual terms, a court must determine whether a reasonably prudent user would understand his or her conduct to constitute assent to those terms." *Edmundson* 85 F.4th at 704 (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128 (2d Cir. 2012)).

Plaintiff did not merely "passively" use NDR's Website. Opposition at 8. Rather, Plaintiff notes that the NDR Website "presents customers with debt relief information, client success

stories, and the ability to apply for their services" and that Plaintiff "visited the website multiple times–including as long ago as November 2022 and as recently as January 2024–on her desktop browser," presumably to inquire about and access NDR's services. Complaint at ¶¶ 37, 56. Plaintiff's frequent use of NDR's Website indicates Plaintiff's assent to the NDR Website and the Terms of Service. *Cairo, Inc. v. Crossmedia Servs., Inc.,* 2005 WL 756610, at *5 (N.D. Cal. 2005) (finding that company's use of a website with knowledge of terms of use posted on the site constituted an acceptance of the terms); *Ticketmaster Corp. v. Tickets.com, Inc.,* 2003 WL 21406289, at *2 (C.D. Cal. 2003) ("[A] contract can be formed by proceeding into the interior web pages after knowledge (or, in some cases, presumptive knowledge) of the conditions accepted when doing so.").

Plaintiff ignores her frequency and use of the NDR Website, and seeks to rely on *Hines* among other authorities; but as described above, the Terms of Service hyperlink was conspicuously highlighted on the NDR Website, putting plaintiff on notice of the Arbitration Agreement. Indeed, in *Hines* "the website did not prompt [plaintiff] to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions." *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010). That is not the case here. Similarly, *Specht* is inapposite, as *Specht* involved a "submerged" clickwrap agreement that plaintiffs "would not have known or learned, prior to acting on the invitation to download" software from the defendant's website. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002).[1]

[1] Similarly, Plaintiff's other authorities are distinguishable and do not apply to the facts at hand. *See Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 564 (S.D.N.Y. 2004) (holding that plaintiff, a user of his step-father's AOL account, was subject to the forum selection clause contained in AOL's terms by virtue of his use and as licensee of his step-father's account); *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1087 (C.D. Cal. 2021) (dismissing claims brought under the California Invasion of Privacy Act, not discussing enforceability of web based arbitration provision); *Carter v. Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 415 (S.D.N.Y. 2023) (not discussing web-based arbitration provision, rather deciding whether "July 2019 **text messages** created a binding agreement to arbitrate") (emphasis

None of these cases are applicable here, where the Terms of Service hyperlink is clear and conspicuous on the NDR Website, highlighting that use of the NDR Website binds users to the Terms of Service. Alan Donnely Decl. at Exhibit B ("As a condition of using this Site, you agree that any disputes pertaining to information presented herein and use of the Site shall be resolved through binding arbitration and not in a court."). Indeed, plaintiff does not provide authorities contesting that "[t]he presence of 'an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound' is critical to the enforceability of any browsewrap-type agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857–58 (9th Cir. 2022) (citing *Nguyen*, 763 F.3d at 1177). The mere fact the Arbitration Agreement is contained within a hyperlink does not preclude its enforceability and applicability to Plaintiff's claims. *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *8 (N.D. Cal. 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ("The fact that the TOS were hyperlinked and not presented on the same screen does not mean that customers lacked adequate notice . . . . [C]ourts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else.'") (citations omitted); *Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. 2021) ("'[t]he fact that the [contract was] hyperlinked and not presented on the same screen does not mean that [users] lacked adequate notice of the contract terms.'") (citing

added*)*; *Berman,* 30 F.4th at 858 (noting web-based agreement was not enforceable only because the text disclosing the pertinent terms was not conspicuous, unlike the NDR Website: "[the notice] printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye."); *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119 (9th Cir. 2020) (noting hyperlinks were inconspicuous because they were "'obscured amongst the brightly colored' icons on the Facebook platform, [] and they are set out in typeface that is substantially smaller than all other text on the screen," unlike the prominent hyperlinks on the NDR Website.).

*Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015)); *Fteja*, 841 F. Supp. 2d 829 at 835–36 (enforcing hyperlinked agreement, noting "[t]he Terms of Use therefore appear to be a kind of so-called 'browsewrap' agreement, 'where website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen.'") (citing *Hines*, 668 F. Supp. at 367).

By repeatedly visiting and using the Website, Plaintiff was repeatedly on notice and warned that her use constituted assent to the Terms of Service and the Arbitration Agreement. *Pollstar*, 170 F. Supp. 2d at 981 ("[A] browse wrap license is part of the web site and the user assents to the contract when the user visits the web site."). Accordingly, Plaintiff manifested her assent to be bound by same. *See Edmundson*, 85 F.4th at 708 ("[W]e have only required that the interface 'make clear' to the reasonable internet user that a specific 'click' signifies assent.") (citation omitted). NDR provided prominent and conspicuous notice of and access to the Terms of Service and Arbitration Agreement on multiple pages of the NDR Website. Plaintiff, a reasonably prudent user, had access to the Terms of Service, and manifested her assent to the Terms of Service by using the NDR Website repeatedly. NDR and Plaintiff entered into a binding Arbitration Agreement and Plaintiff is bound by its terms. Plaintiff's complaints otherwise are insufficient to overcome the federal requirement to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (the FAA "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" so such agreements must be enforced "according to their terms").

## CONCLUSION

NDR's Website interface clearly and conspicuously put Plaintiff on notice that she was agreeing to its Terms of Service, binding her to the Arbitration Agreement. This Court should enforce that agreement by compelling Plaintiff to arbitrate her claims and stay the proceedings pending resolution of the parties' arbitration.

Dated: New York, New York
May 16, 2024

By: */s/ Beth-Ann Krimsky*
**GREENSPOON MARDER LLP**
BETH-ANN E. KRIMSKY
NY Bar No. 2321115; FL Bar No. 968412
Email: beth-ann.krimsky@gmlaw.com
Email: clemencia.corzo@gmlaw.com

JESSICA B. SANDER
NY Bar No. 4750725; FL Bar No. 43154
Primary E-mail: jessica.sander@gmlaw.com
Secondary E-mail: gabby.mangar@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 524-2427

*Attorneys for Defendant, National Debt Relief LLC*