GreenspoonMarder LLP

Beth-Ann Krimsky, Partner
200 E. Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Direct Phone: 954.527.2427
Fax: 954.333.4027
Email: beth-ann.krimsky@gmlaw.com

June 10, 2024

**VIA ECF**

The Honorable Judge Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

**Re: *Gilda Vincent v. National Debt Relief LLC* Case No. 1:24-cv-00440-LJL**

Dear Judge Liman:

We represent National Debt Relief LLC ("Defendant" and/or "NDR"), in this matter. We appreciate the opportunity to provide this supplemental submission in accordance with the Court's direction at the hearing on May 30, 2024 on Defendant's Motion to Compel Arbitration ("Motion") in which the Court requested the parties address: (1) the applicability of the Proposed Restatement of Consumer Contracts[1] (the "Restatement") to the parties' arbitration agreement[2]; and (2) whether a user, other than one who was a repeat visitor like Plaintiff, would assent to the arbitration provision on NDR's Website ("NDR Website") upon his or her first visit to the NDR Website.

**I. The Restatement Supports Defendant's Motion to Compel Arbitration.**

The Restatement supports enforcing NDR's web-based arbitration agreement to Plaintiff's claims as it provides that standard contract terms made available after a consumer manifests assent to the transaction will be adopted if the consumer receives: (1) reasonable notice before manifesting assent to the transaction that additional standard contract terms will be presented later, including reasonable notice that such terms are intended to be part of the transaction; (2) reasonable opportunity to review the terms; and (3) the opportunity to terminate the entire transaction without unreasonable cost, risk, or personal burden. Restatement (First) of Consumer Contracts § 2 (b) (1)-(3).

Plaintiff is a reasonably prudent internet user, sophisticated enough to seek counsel and to then seek to allege a complex web-based cause of action under the California Invasion of Privacy Act based on Plaintiff's continued use of and multiple visits to the NDR Website over a period of at least fourteen months. *See* Complaint and *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023) (a reasonably prudent user is "not a complete stranger to computers or smartphones, having

[1] Restatement (First) of Consumer Contracts (Am. Law Inst. Revised Tentative Draft No. 2, June 2022).

[2] While the Restatement supports the enforceability of the arbitration agreement Plaintiff entered into with NDR, we note that the Restatement expressly addressed potential preemption by the FAA and provides that the interpretation of the FAA and other statutes governing arbitration is outside the scope of common law consumer contracts. *See* Restatement (First) of Consumer Contracts Introductory Note. Accordingly, the Court should still follow the liberal federal policy favoring arbitration and compel this matter to arbitration. *See* Motion [D.E. 17] at p. 12.

some familiarity with how to navigate to a website or download an app.”). Upon Plaintiff’s first entry into the NDR Website, NDR presented Plaintiff with conspicuous notice of NDR’s Terms of Site (“Terms”) through a prominently featured hyperlink printed in white on the blue homepage, which hyperlink is repeated on every landing page. *See* Declaration of A. Donnelly ¶¶ 5-7, Exhibit A. The Terms provided Plaintiff with extensive notice of NDR’s binding arbitration provision and notified Plaintiff of the express ability to opt-out of the arbitration provision. *Id.* at ¶¶ 8-9, Exhibit B.[3] This type of web-based arbitration contract is enforceable and should be enforced here. Restatement (First) of Consumer Contracts § 2, Reporters’ Notes (“Courts will enforce browsewraps as long as reasonable notice of the terms is provided in the circumstances, i.e., as long as the hyperlink to the standard terms is sufficiently conspicuous, and a conspicuous statement alerting the consumers to the presence and location of the posted terms is provided.”).

The Restatement notes a consumer’s entry into or continued use of a proprietary environment of a business, whether a physical store or digital website, constitutes a manifestation of assent to the contract terms, even where no purchase has been made. Restatement (First) of Consumer Contracts § 2, cmt. 7. This is because the consumer’s transaction “consists of the right to use the proprietary environment and receive the benefits it is reasonably expected by an ordinary consumer to confer, under the terms specified by the business, including terms that specify the rights of the business and the obligations of the consumer, as long as the consumer has reason to know that the continued use of the proprietary environment was offered subject to contractual agreement to those terms.” *Id.* Even if the terms are provided after entry into a store or website, a consumer manifests assent to the transaction by “continued use of the proprietary environment and the receipt of its benefits.” *Id.* In other words, when a consumer walks into a store or public space, they are submitting to the businesses’ terms by virtue of being present; the same applies to web-based contracts and use of a website. This scenario is analogous to the contract formed between NDR and Plaintiff.[4]

---

[3] The NDR Terms state in relevant part:

> You may opt out of this Agreement to Arbitrate. If you do so, neither you nor we can require the other to participate in an arbitration proceeding. To opt out, you must notify us in writing, within 30 days of the date that you first began using this Site subject to these arbitration terms or changes to them, either by U.S. mail delivered to: Attn: Legal Department, National Debt Relief, LLC, P.O. Box 2011, New York, NY 10272 or by email delivered to success@nationaldebtrelief.com. You must include: (1) your name and residence address; (2) the email address and/or mobile telephone number associated with your account; and (3) a clear statement that you want to opt out of this agreement to arbitrate.

[4] In fact, the Restatement exemplifies this scenario:

> 13. A consumer enters an information-service website’s homepage for the purpose of gaining access to its information content without creating an account or making a purchase, and without checking a box or clicking a link evidencing assent to any agreement. At the top of the homepage, a notice is posted in large font, underlined, and in contrasting color: “By continuing past this page, you agree to be bound by the Terms of Use for this site.” The phrase “Terms of Use” is underlined and highlighted. If clicked, it directs the consumer to a page that contains the full Terms of Use. By continuing past the homepage, the consumer manifests assent to the transaction concerning the use of the website, and the Terms of Use are adopted under subsection (a).

Restatement (First) of Consumer Contracts § 2, cmt. 7, illus. 13. NDR’s Terms are on its homepage which Plaintiff depicts as separate screenshots, but which ordinarily is scrolled through quickly. *See* Steve Bauer et. al., *Lawyers*

Specifically, Plaintiff here manifested assent to the arbitration provision from her initial entry, continued use, and multiple return visits to the NDR Website.[5] As the Restatement suggests, the NDR Website not only put Plaintiff on reasonable notice of the provisions in NDR's binding arbitration agreement through the prominently placed hyperlink to NDR's Terms on every page, but also provides Plaintiff conspicuous notice of the ability to opt out of the arbitration provision. In addition, she could have terminated her use of the NDR Website. Instead, Plaintiff came back to the NDR Website several times, likely to obtain the free information provided to learn more about debt settlement, budgeting and getting out of debt, in addition to explanations of NDR's services, all of which provide a benefit to Plaintiff. The Terms even contemplate this type of use and note the NDR Terms apply to using the NDR Website for informational purposes:

> National Debt Relief, LLC provides "The User" with access to its content, resources, education, tools for communication, public forums, commerce platforms, and other services through its network of websites, "The Service". National Debt Relief, LLC provides its service to the user, subject to the following Terms of Service.

*See* Declaration of A. Donnelly, Exhibit B.

Thus, as both a first time user, and then through her continued use and benefit of the NDR Website, Plaintiff manifested assent to the contract terms. Where a party's "silence or inaction, along with continued usage and the taking of the benefits . . . substitute[s] for an affirmative acceptance act in operating as manifestation of assent and adoption of the terms that apply to the use of the proprietary environment," i.e. the NDR Website. Restatement (First) of Consumer Contracts § 2, Reporter's Notes; *see also id.* at cmt. 7. Here, Plaintiff continually benefited from the NDR Website, and was provided with reasonable notice of the arbitration provision. Plaintiff had an opportunity to reject and opt-out of the arbitration provision either by expressly opting out or terminating her use of the NDR Website, but she chose neither. It is irrelevant whether Plaintiff affirmatively accepted the Terms or not, because her continued use and benefit of the NDR Website constitutes assent to the Terms and the formation of the contract which requires Plaintiff to arbitrate her claims. *Schnabel v. Trilegiant Corp*., 697 F.3d 110 (2d Cir. 2012). ("Such acceptance need not be express, but where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound."); *see also Register.com, Inc. v. Verio, Inc*., 356 F.3d 393 (2d Cir. 2004) ("It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree."). Plaintiff is therefore bound by the arbitration provision and the terms of

*Online: Discovery, Privilege, and the Prudent Practitioner*, 3 B.U. J. Sci. & Tech. L. 5, 18 n.32 (1997). ("A home page is a document on the World Wide Web that provides information about a business, organization, or specific field of interest, and contains links that direct the user to other information about, or relevant to, the subject of the homepage.").

[5] Compl. at ¶ 55 ("Plaintiff has visited the Website multiple times—including as long ago as November 2022 and as recently as January 2024—on her desktop browser.").

the NDR Website.[6]

**II. The Non-Existent Plaintiff Who May Have Only Visited The NDR Website Once Would Be Bound By The Terms.**

While this Plaintiff acknowledges she cannot argue she only visited the NDR Website once as she alleges she visited multiple times, any user, by virtue of visiting the NDR Website still would be bound by the conspicuous Terms upon his or her first visit to the NDR Website. As acknowledged in the Restatement and in recent decisions, there is no brightline rule for how websites need to look, or how the terms need be presented to a consumer for the consumer to still be bound by those terms. Indeed, the Second Circuit has concluded that Courts consider multiple factors, including whether the screen is cluttered, how the text and hyperlinks to the Terms of Use are positioned, and whether the hyperlinks are contrasted with the background. *See Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, 999 F.3d 828, (2d Cir. 2021); *see also Maldonado v. Nat'l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417, at *2 (S.D.N.Y. July 18, 2023). The Courts refuse to impose a rigid list of particular features that must be present for a user to be put on reasonable notice of the terms and no one factor is dispositive. *Id.* It is a fact specific inquiry based on the "totality of the circumstances." *See* Restatement (First) of Consumer Contracts, Reporter's Notes ("In *Soliman v. Subway Franchisee Advertising Fund Trust, Ltd*., 2021 WL 2324549 (2d Cir. June 8, 2021) the court stated that the "'classification of web-based contracts alone … does not resolve the notice inquiry." Instead, the court stated, the analysis looks at the "totality of the circumstances."). Indeed, whether a user had notice of terms on a website must be analyzed on a case by case basis.

Here, the Terms were conspicuously placed with a clear hyperlink on every page of the NDR Website and thus, a non-existent plaintiff who only visited the NDR Website one time would still be on notice of and bound by those Terms. *See* Motion [D.E. 17] at pp. 2, 4, 10-12 and Reply Memorandum of Law in Support of Motion [D.E. 19] at pp. 3, 5-6. Should that non-existent plaintiff not wish to be bound by the arbitration agreement he or she could have opted out through the simple process also provided on the NDR Website. If he or she chose not to opt-out upon receiving notice of the Terms, he or she is bound by the arbitration agreement and the Terms on the NDR Website.

We appreciate the opportunity to provide this supplemental briefing in support of Defendant's Motion to Compel Arbitration and again request this matter be compelled to arbitration.

Respectfully submitted,

*/s/ Beth-Ann Krimsky*

Beth-Ann Krimsky
*Counsel for Defendant National Debt Relief LLC*

cc: All parties (via ECF)

[6] This Court has also noted that "The federal substantive law of arbitrability, created by [9 U.S.C. § 2], favors arbitration." *Cornelius v. Wells Fargo Bank, N.A.*, 19-cv-11043 (LJL), 2020 WL 11809324, at *3 (S.D.N.Y. Apr. 8, 2020) (Liman, L.).