BURSOR & FISHER
P.A.

1330 AVENUE OF THE AMERICAS
32ND FLOOR
NEW YORK, NY 10019
www.bursor.com

YITZCHAK KOPEL
Tel: 646.837.7127
Fax: 212.989.9163
ykopel@bursor.com

June 10, 2024

***Via ECF***
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

**Re: *Vincent v. National Debt Relief LLC*, Case No. 1:24-cv-00440-LJL**
**Plaintiff's Supplemental Brief On Motion To Compel Arbitration**

Dear Judge Liman:

I represent Plaintiff Gilda Vincent ("Plaintiff") in the above action. Pursuant to the Court's May 30, 2024 Order, Plaintiff respectfully submits this supplemental brief regarding Defendant National Debt Relief LLC's ("Defendant") Motion to Compel Arbitration (ECF No. 16) (the "Motion"). Specifically, Plaintiff writes to address two issues: (i) the application of the Restatement of the Law, Consumer Contracts (the "Restatement")[1] to the Motion, and (ii) whether Plaintiff could be compelled to arbitrate claims based on her first visit to the Website, even if she were on inquiry notice of the arbitration clause on subsequent visits.

## 1. THE RESTATEMENT SOLIDIFIES THAT DEFENDANT'S MOTION MUST BE DENIED UNDER BINDING PRECEDENT

The Restatement states, in relevant part, "[a] standard contract term is adopted as part of a consumer contract if the business demonstrates that the consumer manifested assent to the transaction after receiving: (1) reasonable notice of the term and of the intent to include the term in the consumer contract, and (2) reasonable opportunity to review the term." *Id.* § 2.

This standard mirrors Second and Ninth Circuit precedent,[2] which hold it is *Defendant's burden* to demonstrate (i) Plaintiff was on actual or inquiry notice of the Terms of Use, and (ii) there is language linking Plaintiff's actions to assent to the Terms of Use. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry

[1] Restatement of the Law, Consumer Contracts TD No 2 REV (2022)

[2] As Plaintiff noted in her opposition brief, "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up).

notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."); *Berkson v. Gogo LLC*, 9. F. Supp. 3d 359, 403 (E.D.N.Y 2015) ("For an internet browsewrap contract to be binding, consumers must have reasonable notice of a company's 'terms of use' and exhibit 'unambiguous assent' to those terms." (quoting *Specht v. Netscape Communications Corp*., 306 F.3d 17, 35 (2d Cir. 2002) (Sotomayor, J.)).

The Restatement states that browsewrap agreements, such as the one in the instant action, are generally not enforceable:

> it may, in some circumstances, be more difficult to demonstrate satisfaction of the requirements of adoption in a "browsewrap" presentation, where the alerts provided to consumers about the proposed terms are often less visible, and where the connection between the action taken and the adoption of the terms is sometimes less clear. Similarly, where the form of the presentation itself does not communicate its contractual nature, for example, a checkout receipt at a retail store, the business may have to take additional steps to give the consumer reasonable notice that a contract is being formed.

Restatement § 2.

Again, this fits squarely within Second and Ninth Circuit precedent, where "courts have refused to enforce" browsewrap agreements like the one here "[w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1177 (9th Cir. 2014); *see also Specht.*, 306 F.3d 17, 32 (2d Cir. 2002) ("[A] reference to the existence of ... terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) ("[W]hen terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to find constructive notice."); *Hines v. Overstock*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009) (ruling that the plaintiff had no actual notice of the Terms and Conditions of Use, the link to which was not visible without scrolling down to the bottom of the screen); *Berman*, 30 F.4th at 856 ("Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms.").

As the Reporters' Notes explain, "[h]yperlinks or references to terms that are not prominently displayed and that require a consumer to actively look for them fail to provide reasonable notice of their existence. Failure to provide this notice will result in nonenforcement." Restatement § 2 (cleaned up).

Finally, it is arguable that Plaintiff provided no consideration by simply a website, and that the Terms of Use are unenforceable for this reason as well. *Lawrence v. Finicity Corp.*, --- F. Supp. 3d ---, 2024 WL 584615, at *20 (E.D. Cal. Feb. 13, 2024). But even if there was

consideration, the Restatement clearly states the Terms of Use are still unenforceable for lack of notice:

> [t]he deliberate act of entering the business's proprietary environment and remaining in it long enough to gain access to the content and benefits it confers could constitute a manifestation of assent by the consumer to a transaction *if the consumer is reasonably so informed*.

*Id.* § 2. For the reasons set forth above, Defendant failed to demonstrate Plaintiff was on actual or constructive notice of the Terms of Use.

In short, Defendant's Terms of Service were never "reasonably communicated" to Plaintiff, because the hyperlinks to the same were not conspicuously displayed. Therefore, Plaintiff never assented to the Terms of Use and the arbitration clause and class action waiver contained within.

## 2. THE ARBITRATION CLAUSE IS NOT RETROACTIVE AND WOULD NOT APPLY TO CLAIMS ACCRUING THE FIRST TIME PLAINTIFF VISITED THE WEBSITE

At the May 30, 2024 Hearing, the Court asked whether the arbitration clause would cover Plaintiff's claims accruing the first time she visited the website, if Defendant met its burden to show Plaintiff was on constructive notice of the Terms of Use. To be clear, "just as 'there is no reason to assume that users will scroll down to subsequent screens simply because screens are there,' there is no reason to assume the users will click on the settings menu simply because it exists." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (quoting *Specht*, 306 F.3d at 32) (internal brackets removed). Thus, Defendant cannot establish Plaintiff was on notice of the Terms of Use on the first visit to the Website or any subsequent visit. But even if Plaintiff was on notice of the Terms of Use on a subsequent visit (she was not), the arbitration clause would not retroactively apply to Plaintiff's claims that accrued the first time she visited the Website.

*Offley v. Fashion Nova, LLC*, 671 F. Supp. 3d 60 (D. Mass. 2023), is instructive. In that case, the court addressed whether an arbitration clause "should apply retroactively to Plaintiffs' claims, which relate only to transactions that pre-date the adoption of the Terms." *Id.* at 66. The court held the arbitration clause "cannot be read naturally to apply to prior purchases" for several reasons. *Id.* at 67. *First*, the court noted "the language of the Terms repeatedly uses the present tense 'purchase" and "purchases,' leaving no indication that the Terms were intended to cover prior transactions … This repeated use of present tense language cuts against the argument that the Terms were meant to apply to past transactions." *Id.* at 67. And *second*, the court noted "the 30-day opt-out provision cuts against retroactive application" because "the plaintiffs could not have opted out and precluded all previous purchases from arbitration." *Id.*

The same factors that weighed against retroactive application in *Offley* are present here. *First*, the Terms of Use make use of the present tense throughout, which "suggests that the clauses govern present or future conduct, not past conduct." *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) ("[T]he CBAs' use of the present tense 'arise' suggests that the clauses govern present and future, but not past, conduct."); *see also Morse v. ServiceMaster Global Holdings Inc.*, 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) ("The use

of the present participle 'arising' makes it clear that it applies to claims that may arise going forward, not claims that have already accrued."); *Russell v. Citigroup*, 748 F.3d 677, 679 (6th Cir. 2014) ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggest[s] that the contract governs only disputes that begin—that arise—in the present or future. The present tense usually does not refer to the past."). And *second*, the Terms of Use contain a provision allowing users to opt-out "within 30 days of the date that you first began using the Site." Donnelly Decl. Ex. A. Applying this retroactively would prevent users from opting-out of any previously accrued claims. *Offley*, 671 F. Supp. 3d at 67.

Thus, Defendant's arbitration clause does not contain any retroactive language, let alone language that would "clearly and unequivocally" evidence an intent for the arbitration clause to apply retroactively. *Id.* at *3 ("Even assuming Mr. Continolo is deemed to have agreed to the arbitration provision, defendants[] offer no justification for holding that he agreed to arbitrate acts that occurred before the effective date of that agreement.").

*Finally*, the Terms of Use contain a provision that enables Defendant "to change any of the terms, conditions, and notices under which 'The Services' are offered." Donnelly Decl. Ex. A. But courts have held "the implied covenant of good faith and fair dealing prohibits a party from making unilateral changes to an arbitration agreement that apply retroactively to 'accrued or known' claims because doing so would unreasonably interfere with the opposing party's expectations regarding how the agreement applied to those claims." *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (2015) (cleaned up); *see also Bryden v. Verizon California Inc.*, 2016 WL 3186913, at *3 (Cal. Ct. App. May 31, 2016) ("[E]ven when contracts authorize unilateral changes to terms, changes by one contracting party without fair warning and clarity to the other—such as imposition of a supposedly retroactive term without making its retroactive nature clear—may upset the parties' expectations and pose a serious concern that the contract is illusory."). In such cases where a drafting party "retained the right to unilaterally abolish or modify the arbitration program, then the agreement to arbitrate was illusory and not binding on the plaintiff[]." *Morrison v. Amway Corp.*, 517 F.3d 248, 255 (5th Cir. 2008) (emphasis removed). This too weighs against finding the arbitration clause applied retroactively.

Accordingly, Plaintiff's claims stemming from her first visit to the Website cannot be compelled to arbitration.

Respectfully submitted,

Y. Kopel

Yitzchak Kopel

CC: All counsel of record (via ECF)